FILED
CHARLOTTE, N.C.
01 MAY 22 PM 12:06
U.S. DISTRICT COURT
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:01cv281-MU

| | |
|---|---|
| SHELTON GORDON, WILLIAM COOK, ERIC GRAHAM, JEROME MONK and DOUGLAS VINES, <br><br>Plaintiffs,<br><br>v.<br><br>HILLCREST FOODS, INC., WAFFLE HOUSE, INC., PURSER SECURITY AND PATROL SERVICES, INC.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

### NATURE OF ACTION

1. Plaintiffs, five African-American men, bring this action to redress the injuries they suffered and continue to suffer as a result of Defendants' racially discriminatory actions at the Waffle House Restaurant located at 1304 West Roosevelt Boulevard in Monroe, North Carolina.

2. On February 11, 2001, on account of Plaintiffs' race, Defendants refused to serve Plaintiffs and ejected them from the restaurant. By these and other actions, Defendants have (1) denied Plaintiffs the right to make and enforce contracts on the same basis as white citizens in violation of 42 U.S.C. § 1981, (2) denied Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

accommodations of the Waffle House Restaurant on the basis of race, in violation of 42 U.S.C. § 2000a and N.C.G.S. § 99-D1, (3) committed an unfair or deceptive act or practice in violation of N.C.G.S. § 75-1.1 and (4) defamed Plaintiffs.

3. Plaintiffs thus seek compensatory and punitive damages and an injunction directing Defendants to desist from and remedy their illegal conduct.

## PARTIES

4. Plaintiff Shelton Gordon is an African-American citizen of the United States. At all times relevant to this Complaint, Plaintiff Gordon has been a resident of the District of Columbia.

5. Plaintiff William Cook is an African-American citizen of the United States. At all times relevant to this Complaint, Plaintiff Cook has been a resident of the state of Maryland.

6. Plaintiff Eric Graham is an African-American citizen of the United States. At all times relevant to this Complaint, Plaintiff Graham has been a resident of the District of Columbia.

7. Plaintiff Jerome Monk is an African-American citizen of the United States. At all times relevant to this Complaint, Plaintiff Monk has been a resident of the state if Maryland.

8. Plaintiff Douglas Vines is an African-American citizen of the United States. At all times relevant to this Complaint, Plaintiff Vines has been a resident of the state of Maryland.

9. Defendant Hillcrest Foods, Inc. is a Georgia corporation doing business in the State of North Carolina. Its corporate headquarters are at 345 Saw Mill Drive, Suwanee, Georgia. Upon information and belief, Hillcrest Foods, Inc. owns or operates approximately one hundred and twenty-five (125) Waffle House franchises, including the Waffle House Restaurant located at 1304 West Roosevelt Boulevard in Monroe, North Carolina.

10. Defendant Waffle House, Inc. is a Georgia corporation doing business in the State of North Carolina. Its corporate headquarters is in Norcross, Georgia.

11. Defendant Purser Security and Patrol Services, Inc. is a North Carolina corporation incorporated in the state of North Carolina.

12. Defendants Hillcrest Foods, Inc., and Waffle House, Inc., maintain either actual or constructive control, oversight, and/or direction over the operation of the Waffle House Restaurant located at 1304 West Roosevelt Boulevard, Monroe, North Carolina, including all policies and practices related to management, personnel, operational and customer service, including the discriminatory practices complained of herein.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000a-6.

14. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1) because the events giving rise to the allegations in this complaint occurred within the Western District of North Carolina.

# FACTS

15. Plaintiffs Gordon, Graham, Monk and Vines are African-American members of The Heavenly Sons, a gospel singing group from Washington, D.C., and Plaintiff Cook is their bus driver. On February 11, 2001, at approximately 1:30 a.m., Plaintiffs Cook, Gordon, Graham, Monk, and Vines entered the Waffle House restaurant located at 1304 West Roosevelt Boulevard in Monroe, North Carolina. The men, who ranged in age from 26 to 44 years old, had just come from a gospel performance in Pageland, South Carolina. They were spending the night at a hotel in Monroe before continuing to another engagement in Lynchburg, Virginia. The men were hungry and stopped at the restaurant for something to eat.

16. The Waffle House in Monroe, North Carolina is open twenty-four hours a day. Food orders are taken by wait staff at the tables or at the counter, prepared in the kitchen, and then delivered to the tables or the counter by wait staff. Customers may also place to-go orders at the counter.

17. Upon entering the restaurant, Plaintiffs went to the counter and placed to-go food orders with a white waitress, Donna Hayden. Plaintiffs Monk, Graham, Gordon, and Vines then sat at the counter to wait for their food, while Plaintiff Cook remained standing so he could keep watch on the group's bus which was parked outside. The restaurant was crowded, but there were four empty stools at the counter to accommodate Plaintiffs.

18. A white customer was also seated at the counter, waiting for a to-go order. Soon after Plaintiffs arrived, he received his food and left the restaurant.

19. While seated at the counter and waiting for their food, Plaintiffs changed their minds, decided to eat their food in, and politely informed Ms. Hayden that they would eat their food in the restaurant rather than take it to-go. Ms. Hayden did not say anything in response, but walked away behind the counter.

20. Minutes later, Donald Putman, a white uniformed security guard employed by Purser Security and Patrol Services, Inc. at the restaurant, approached Plaintiffs and in an aggressive tone told them to get out of their seats.

21. Plaintiff Cook asked Mr. Putman why they had to leave the counter seats. Several white customers who had arrived at the restaurant after Plaintiffs, were standing behind Mr. Putman, waiting to be seated. Referring to this group, Mr. Putman informed Plaintiffs that they needed to get up so that the white customers could sit down.

22. Plaintiffs informed Mr. Putman that they had told the waitress they were going to eat their food in the restaurant. Mr. Putman was unmoved, and loudly repeated his command that Plaintiffs leave their counter seats. Mr. Putman also told Plaintiffs that he was only doing what the waitress, Ms. Hayden, had told him to do.

23. Mr. Putman ordered Plaintiff Cook to leave the restaurant. Plaintiff Cook, still stunned by the callous treatment complied with the order. Plaintiff Cook gave some money to Plaintiff Monk for his order, and then waited outside on the bus for the remaining Plaintiffs.

24. Plaintiffs Monk, Graham, Gordon, and Vines got up from their seats and asked Mr. Putman if they would receive the food they had ordered. Mr. Putman asked a cook whether Plaintiffs' order had been called in. When the cook answered no, Mr. Putman instructed the cook not to prepare the food because Plaintiffs would be leaving.

5

Mr. Putman then told Plaintiffs they had to leave the restaurant, and that he was going to call the police. When they heard this, Plaintiffs themselves asked the cook if they would be served, and the cook said he could not serve them because Mr. Putnam had ordered them to leave the restaurant.

25. Upon information and belief, while Plaintiffs were still in the restaurant, Mr. Putman and/or an employee of the restaurant called the police and reported that Plaintiffs were causing a disturbance.

26. Mr. Putman continued to insist that Plaintiffs Gordon, Graham, Monk, and Vines leave the restaurant. Plaintiffs were upset, but were calm and civil, and they complied with his demand. Mr. Putman followed them into the parking lot, taunting them. Plaintiffs Gordon, Graham, and Vines immediately boarded their bus.

27. Plaintiff Monk reentered the restaurant and took the names and phone numbers of several customers as witnesses. He then returned to the parking lot.

28. As Plaintiff Monk was leaving the restaurant, at approximately 2:00 a.m., three members of the Monroe Police Department arrived. They spoke with Plaintiff Monk, Mr. Putman, Ms. Hayden, and the restaurant's night manager, and they obtained contact information from Plaintiffs and a customer who had witnessed the incident.

29. The police told Mr. Putman that there were no grounds to charge Plaintiffs with any criminal activity and left the restaurant without taking Plaintiffs into custody or issuing any citations against them.

30. Plaintiffs left the restaurant parking lot, stopped at a convenience store to get food, and returned on their bus to their nearby hotel.

31. At all times relevant to the events described above, the wait staff and cooking staff of the Waffle House restaurant located in Monroe, North Carolina were acting within the scope of their employment as employees, agents and/or representatives of Defendants Hillcrest Foods, Inc., Waffle House, Inc.

32. At all times relevant to the events described above, Mr. Putman was acting within the scope of his employment as an employee, agent and/or representative of Defendant Purser Security and Patrol Services, Inc.

33. On February 11, 2001, Defendants, acting through their employees, agents and/or representatives, refused to serve, or otherwise denied Plaintiffs food because of their race. Defendants' actions on February 11, 2001, were undertaken with racially discriminatory animus for the purpose of denying Plaintiffs equal treatment on the basis of race.

34. The discriminatory practices described above were carried out (a) at the direction of and with the consent, encouragement, knowledge, and ratification of defendants; (b) under defendants' authority, control and supervision; and/or (c) within the scope of the employees' employment.

35. The conduct complained of by Defendants and their employees, agents and/or representatives as described above denied Plaintiffs the right to make and enforce contracts on the same basis as whites, and violated Plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants Hillcrest Foods, Inc., Waffle House, Inc.

36. Through the actions of its employees, agents and/or representatives described above, Defendants acted intentionally, maliciously, and with willful, callous, wanton and reckless disregard for Plaintiffs' federally protected rights.

37. As a proximate result of the actions of defendants described above, Plaintiffs have suffered, continue to suffer, and will in the future, suffer great and irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress, mental anguish, and a deprivation of rights to make and enforce contracts on the same basis as whites. For these injuries, Plaintiffs seek compensatory damages.

38. Because Defendants acted intentionally and maliciously, and with callous and reckless disregard for Plaintiffs' federally protected rights, plaintiffs also seek punitive damages.

39. Defendants' motivation in calling the police and in forcing Plaintiffs Gordon, Cook, Graham, Monk, and Vines to leave the restaurant was the race of Gordon, Cook, Graham, Monk, and Vines.

40. The conduct complained of engaged in by Defendants and their employees, agents and/or representatives as described above denied Plaintiffs the right to make and enforce contracts on the same basis as whites, and violated Plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants.

41. Through the actions of its employees, agents and/or representatives described above, Defendants acted intentionally, maliciously, and with willful, callous, wanton and reckless disregard for Plaintiffs' federally protected rights.

42. As a proximate result of the actions of Defendants described above, Plaintiffs have suffered, continue to suffer and will in the future suffer great and irreparable loss and injury, including, but not limited to, humiliation, embarrassment, emotional distress, mental anguish, and a deprivation of rights to make and enforce contracts on the same basis as whites. For these injuries, Plaintiffs seek compensatory damages.

43. Because Defendants acted intentionally and maliciously, and with callous and reckless disregard for Plaintiffs' federally protected rights, Plaintiffs also seek punitive damages.

## COUNT I
### (42 U.S.C. § 1981)

44. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43, as if set forth fully herein.

45. By the actions described above, Defendants have denied Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

## COUNT II
### (42 U.S.C. § 2000a)

46. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 45, as if set forth fully herein.

47. The Waffle House restaurant in Monroe, North Carolina, owned and operated by defendant Hillcrest Foods, Inc., is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2).

48. The operations of the Waffle House restaurant in Monroe, North Carolina, owned and operated by Defendants, affect commerce within the meaning of 42 U.S.C. § 2000a.

49. By the actions described above, defendants have denied plaintiffs the full and equal enjoyment of their goods, services, facilities, privileges, advantages, and accommodations on the basis of race, in violation of 42 U.S.C. § 2000a.

## COUNT III
## (N.C.G.S. § 99-D1)

50. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 49, as if set forth fully herein.

51. By the actions described above, Defendants have denied plaintiffs the full and equal enjoyment of their goods, services, facilities, privileges, advantages, and accommodations on the basis of race, in violation of N.C.G.S. § 99-D1.

## COUNT IV
## (N.C.G.S. § 75-1.1)

52. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51, as if set forth fully herein.

53. The operations of the Monroe, North Carolina Waffle House, are in or affect commerce within the meaning of N.C.G.S. § 75-1.1

54. By the actions described above, the Defendants engaged in unfair or deceptive trade practices in violation of N.C.G.S. § 75-1.1.

## COUNT V
## Relief: (Defamation – Slander Per Se)

55. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 54 above.

56. Upon information and belief, Defendants, through their agents and employees, slandered Plaintiffs by falsely accusing them of disorderly conduct and other criminal and morally offensive behavior.

57. Defendants published this defamatory information by communicating it to law enforcement officials and other individuals in and near the restaurant from which Plaintiffs were evicted.

58. Defendants' defamatory statements, and the publication thereof, constituted slander per se.

59. As a result of Defendants' slanderous conduct, Plaintiffs suffered severe distress, extreme humiliation, and other compensatory losses. Such damages may be presumed by law, and are demanded in excess of ten thousand ($10,000) dollars.

60. Defendants' defamatory acts were done in willful and reckless disregard of Plaintiffs' rights, entitling them to an award of punitive damages in excess of ten thousand ($10,000) dollars.

## COUNT VI
### (Defamation – Libel Per Se)

61. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 60 above.

62. Upon information and belief, Defendants, through their agents and employees, falsely accused Plaintiffs of disorderly conduct and other criminal and morally offensive behavior. Defendants thereafter caused false information to be recorded in investigation reports, internal records, and other official documents generated by police officers to whom Defendants communicated slanderous statements about

Plaintiffs. The official documents containing Defendants' defamatory statements about Plaintiffs are public record.

63.  The conduct of Defendants that led to the publication of false information about criminal, morally offensive behavior by Plaintiffs constitutes libel per se.

64.  As a result of Defendants' defamatory conduct, Plaintiffs suffered severe distress, extreme humiliation, and other compensatory losses. Such damages may be presumed by law, and are demanded in excess of ten thousand ($10,000) dollars.

65.  Defendants' defamatory acts were done in willful and reckless disregard of Plaintiffs' rights, entitling them to an award of punitive damages in excess of ten thousand ($10,000) dollars.

## PRAYER FOR RELIEF

55.  **WHEREFORE**, Plaintiffs pray that the Court grant them relief as follows:

(a)  enter a declaratory judgment finding that the actions of defendants alleged in this Complaint violated 42 U.S.C. § 1981 and 2000a, and N.C.G.S. § 75-1.1 and § 99-D1.

(b)  enter a permanent injunction barring defendants from continuing to engage in the illegally discriminatory conduct alleged in this complaint;

(c)  enter a permanent injunction directing that defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this complaint and to prevent repeated occurrences in the future;

(d) award compensatory damages in an amount that would fully compensate plaintiffs for the economic loss, humiliation, embarrassment, emotional distress, and mental anguish caused by defendants' violation of the law alleged in this complaint;

(e) award punitive damages in an amount that would punish defendants for the willful, wanton and reckless misconduct alleged in this complaint and that would effectively deter defendants from future discriminatory behavior;

(f) award plaintiffs their reasonable attorneys' fees and costs; and

(g) order all other relief deemed just and equitable by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable as of right.

This the 22nd day of May, 2001.

Respectfully submitted,

_____
Henderson Hill (N.C. Bar # 18563)
Corie Pauling (NC Bar #24948)
FERGUSON, STEIN, WALLAS, ADKINS,
    GRESHAM & SUMTER, P.A.
741 Kenilworth Avenue
Suite 300 Park Plaza Building
Charlotte, NC 28204
(704) 375-8461 (phone)
(704) 334-5654 (facsimile)

Ted J. Williams
THE LAW OFFICE OF TED J. WILLIAMS
1200 G Street, N.W.
Suite 800
Washington, DC 20004
(202) 434-8744 (phone)
(202) 347-3378 (facsimile)

Avis E. Buchanan
Susan E. Huhta
WASHINGTON LAWYERS' COMMITTEE FOR
COMMITTEE FOR CIVIL RIGHTS &
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000 (phone)
(202) 319-1010 (facsimile)

ATTORNEYS FOR PLAINTIFFS